(136 So. 821)

**ENSLEY MORTGAGE & LOAN CO. v. CHAD-WICK et al.**

6 Div. 898.

Supreme Court of Alabama.

May 21, 1931.

Rehearing Granted June 27, 1931.

Further Rehearing Denied Oct. 22, 1931.

Almon & Almon, of Decatur, for petitioner.

469

Coleman, Coleman, Spain & Stewart and H. H. Grooms, all of Birmingham, amici curiæ.

Lee C. Bradley, Jr., L. B. Bewley, and Bradley, Baldwin, All & White, all of Birmingham, for appellant.

H. L. Anderton, of Birmingham, for appellees.

ANDERSON, C. J.

I think that the opinion of Justice BOULD-IN reads into section 7000 of the Code of 1923 an unwarranted exception in favor of banks. The opinion concedes that the complainant corporation was a creditor of the Ensley Bank, being a depositor, and that the Ensley Bank owned some of the stock in said complainant corporation, and section 7000 of the Code gives the complainant corporation a lien on said stock so owned by the Ensley Bank for any debt or liability incurred by it to the complainant corporation.

In the case of Lanier Lumber Co. v. Rees, 103 Ala. 622, 16 So. 637, 49 Am. St. Rep. 57, the lien was denied for the reason that the corporations there involved could not, under the law then existing, own stock in another corporation, but, under section 6365, the Ensley Bank was authorized to own the stock as well as under section 7015, subdivision 10. Since the bank had the authority to purchase or own the stock in the complainant corporation, it acquired and owned the same subject to the same conditions as would apply to any other owner of said stock, and I find nothing in the statutes giving it a special privilege or immunity.

470

I think the present bill of complaint to enforce the lien. of the complainant corporation contains equity, and that the rehearing should be granted and the decree of the circuit court should be reversed, and in this Justices SAYRE, THOMAS, BROWN, and FOSTER concur.

Rehearing granted, judgment of affirmance set aside and reversed and remanded.

SAYRE, THOMAS, BROWN, and FOSTER, JJ., concur.

GARDNER and BOULDIN, JJ., dissent.

BOULDIN, J. (dissenting).

The case may be briefly stated thus: An ordinary banking corporation in course of business becomes the equitable owner of stock in another corporation. This corporation becomes a depositor in the bank. The bank fails and is taken over for liquidation by the banking department. Has the corporation a lien on the stock held by the bank, under Code, § 7000, enforceable in equity as security for the amount of its deposit in the bank at the time of failure?

Section 7000 of the Code provides: "All such corporations have a lien on the shares of its stockholders, for any debt or liability incurred to it by a stockholder, before a notice of a transfer or levy on such shares."

The remaining portion of the section provides a summary remedy by sale of the stock. This remedy is cumulative. The general equity jurisdiction to enforce liens may be invoked. Crawford v. Twin City Oil Co., 216 Ala. 216, 113 So. 61; Rowe v. Bank of New Brockton, 207 Ala. 384, 92 So. 643.

This statute, aimed at affording security to the corporation like unto that theretofore accomplished through charters and by-laws, has been given a liberal construction to accomplish its purpose.

Accordingly, being a law-made lien, any person acquiring corporate stock by transfer from a stockholder is chargeable with notice of the lien thereon in favor of the corporation to secure any indebtedness of the transferor. Crawford v. Twin City Oil Co., supra; Mobile Towing & Wrecking Co. v. First National Bank, 201 Ala. 419, 78 So. 797.

The lien extends to "any debt or liability" incurred by the stockholder before notice to the corporation of a transfer. It is not limited to unpaid subscriptions. The inclusive terms of the statute as written are given effect. First National Bank v. Huntsville Bank & Trust Co., 213 Ala. 236, 104 So. 760; Mobile Mutual Ins. Co. v. Cullom, 49 Ala. 562; Birmingham Trust & Savings Co. v. East Lake Land Co., 101 Ala. 304, 13 So. 72.

In the case last cited, it was said (101 Ala. 308, 13 So. 72, 73): "It is a sound policy of law to give a liberal and generous construction to this statute, to the end that a corporation may enjoy that just and equitable right of set off. accorded to natural persons, of not being required to pay its creditor—the stockholder—before he accounts for his debts to the corporation."

In line with the favored policy thus announced, such lien attaches to stock in the hands of an equitable owner, as, for example, the transferee of the record stockholder, with notice thereof to the corporation, although the legal title has not passed for want of a transfer on the books of the corporation as per statute. Planters' & Merchants' Mut. Ins. Co. v. Selma Savings Bank, 63 Ala. 585.

The bill in the instant case avers the bank is the owner of the stock in complainant corporation, but no transfer has been registered on its books. The bank is, therefore, to be regarded as the equitable owner of such stock, and within the rule of the Selma Bank Case to that extent.

But the Selma Bank Case involved the lien of the bank on its own stock as security for the debt of its stockholder to the bank. It does not deal with the question here presented, the assertion of such lien by a depositor of a bank as security for its deposit, creating, in effect, a class of secured depositors, working a preference over all other depositors in case of insolvency of the bank.

At common law no lien of a corporation on stock to secure the indebtedness of its stockholder was recognized at law nor in equity.

For the protection of corporations it became a general custom to confer in their charters express power to provide for such lien through its by-laws. Birmingham Trust & Savings Co. v. Louisiana National Bank, 99 Ala. 379, 13 So. 112, 20 L. R. A. 600; Mobile Mut. Ins. Co. v. Cullom, 49 Ala. 558; Cunningham v. Alabama Life Ins. & Trust Co., 4 Ala 652.

The lien of Code, § 7000, is statutory. It appeared first in the Code of 1886 as section 1674.

Its construction was presented in Lanier Lumber Co. v. Rees, 103 Ala. 622, 16 So. 637, 49 Am. St. Rep. 57, wherein one corporation sought to enforce the lien against another corporation as a stockholder and debtor to complainant corporation. This court declared: "There is no averment in the. bill that the Morrison Lumber Company was authorized by its charter or otherwise to subscribe for and hold or own stock in other corporations, but, to the contrary, it is virtually admitted that it had no such statutory power. And it is too well settled to require discussion that without such authority one corporation cannot subscribe for, or invest its own capital in, the shares. of other corporations, either directly, as by becoming in its own name an

incorporator of a new corporation, or indirectly, by subscriptions in the names of persons acting as agents, and holding as its trustees. And it is equally clear, upon principle and authority, that all such attempted subscriptions or contracts of subscription are not voidable, but utterly void. 1 Mor. Corp. §§ 431, 433; 4 Am. & Eng. Enc. Law, p. 249, note 2; B. M. & F. Co. v. Harvey, 92 Tenn. 115, 20 S. W. 427 [18 L. R. A. 252, 36 Am. St. Rep. 71]; Central R. R. Co. v. Pennsylvania R. R. Co., 31 N. J. Eq. 475; Commercial Fire Ins. Co. v. Board of Revenue, 99 Ala. 1 [14 So. 490, 42 Am. St. Rep. 17]." 103 Ala. 626, 627, 16 So. 637, 638, 49 Am. St. Rep. 57.

To same effect is McAlester Mfg. Co. v. Florence Cotton & Iron Co., 128 Ala. 240, 30 So. 632; 1 Thompson on Corporations (3d Ed.) § 192.

Under these decisions the lien statute, now Code, § 7000, had no application to the case in hand.

Is it extended to this case by later statutes?

By later statutes, corporations generally have more extended power to subscribe for and own stock in other corporations. Thus by Code, § 7015, subd. 10, general power is conferred upon corporations to "subscribe for, acquire, hold, and dispose of the stock * * * of any other corporation," but not if such power is "inconsistent with the nature, character, or object of the corporation." Code, § 7015.

Under section 6365, banks are empowered to "buy and sell * * * bonds, stocks, bills of exchange, notes and other negotiable paper."

Without seeking to define the extended powers thus conferred upon banks, it remains that investment in stock, whether strictly incident to the banking business or not, constitutes for the time, resources of the bank behind its liabilities as a banking institution.

The question, therefore, reduces itself to this: Does the law contemplate a lien on a portion of the bank's resources in favor of one depositor, working a preference, in the event of insolvency, in the distribution of the bank assets? Such is not the policy of our law.

At one time, by section 250 of the State Constitution (1901), depositors without stipulation for interest, were given preference in case of insolvency.

This was repealed by Special Amendment No. 5. By this amendment the policy of giving preferences even to these depositors as a class was condemned.

Much more discriminative is it to create a class of secured depositors, secured by an incumbrance on assets constituting a part of the bank's resources behind all its liabilities.

We do not overlook the accepted rule that even after insolvency a borrower, or other debtor of the bank, may offset his deposit against such demand.

Such cases are not wholly analogous to this.

Appellant asserts a continuing lien or incumbrance upon certain bank assets to secure such balance, varying from day to day as it may elect, protecting it as no other depositor in case of insolvency.

Without question the legal relation of debtor and creditor exists between the bank and the general depositor. It is not, however, the ordinary case of debtor and creditor, but one peculiar to the banking business everywhere known and aptly designated as banker and depositor. The ordinary depositor thinks of himself as having money in the bank, not a mere debt against the bank. The legal terminology "depositor" shows a distinct relation recognized in the law.

The deposit is subject to withdrawal on demand. The beginning, duration, and extent of the connection is at the will of the depositor.

As a public institution supervised by public authority, the bank occupies most important relations to all its depositors and other creditors, and in the event of insolvency, its assets are a trust fund for the payment of its creditors. Indeed, the primary purpose of a bank is to provide the public with a place of safety in which to keep money, etc. For this service it may loan money and do such other things as the law may prescribe. 1 Morse on Banking, §§ 47, 59, 77.

The corporation lien of Code, § 7000, has a wide, clear field of operation without infringing upon or modifying the banking laws. The enlarged power to deal in "stocks" does not appear to have any reference to corporation liens. There is danger from any construction of the statute which extends same into fields not in the legislative mind. Changes in the settled law and policy of the state will not be declared unless such intent clearly appear. Sedgwick on Statutory Construction, p. 224; Lewis' Sutherland, Statutory Construction, § 347.

We think the law of banking, the law of the bank and its depositor, governs this case, not the law of the corporation and its stockholder. To hold otherwise would be to subordinate the major concern to the incidental, to throw into banking new exigencies not contemplated by law, exigencies whose reactions on the business itself, it would be difficult to forecast.

The opinion of the majority is, in my judgment, so unsound in principle, and so hurtful

472

in effect, that I feel impelled to express the view that my brothers are unwittingly doing the precise thing they charge against the original opinion. By a technical construction of the wording of section 7000, this opinion extends it into a field where the rights of the public are dominant, and one not in the mind of the Legislature when enacted in 1886, not in mind in the subsequent statutes not dealing at all with this corporation lien.

The majority opinion misconceives the effect of Lanier Lumber Co. v. Rees, 103 Ala. 622, 16 So. 637, 49 Am. St. Rep. 57. That case merely holds, in line with authority generally, that one corporation cannot subscribe for stock in another or become a stockholder in the manner there involved. It did not hold that a bank, or other corporation, might not become the owner of stock incidentally in the conduct of the business for which the corporation was formed. Banks have always been free to take stock as collateral, and, if need be, acquire it in the collection of a debt. This is a wholly different proposition from that of a bank going into every kind of business by subscribing for stock in other corporations. In my opinion banks have no such power now.

If a bank becomes an owner of stock as a mere incident to its banking business, then the law of banking is the governing law, and not the law defining the relations between the corporation and its stockholder.

I therefore respectfully dissent.